UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| RONALD C. FELDER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | No. 3:14 CV 1924 |
| vs. | ) |  |
|  | ) |  |
| BRUCE LEMMON, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPINION AND ORDER

### I. BACKGROUND

Ronald C. Felder, a *pro se* prisoner, filed an amended complaint attempting to sue six defendants based on three claims. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . .." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, pursuant to 28 U.S.C. § 1915A, this court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief.

### II. DISCUSSION

#### A. Count One

Felder alleges that Officers M. Razo and A. Steward did not protect him from an attack by a fellow inmate on March 19, 2014. He acknowledges that he "has raised the issues of 'FAILURE TO PROTECT' in the LaPorte Circuit Court under Cause No. 46C01-1408-CT-001595." (DE # 16 at 10.) Felder has since lost that case. (DE # 16 at 18.)

Nevertheless, even without reference to principles of *res judicata*, it was malicious for plaintiff to file federal lawsuit while he was also suing these defendants in state court based on the same events.[1]

Even if this suit was not malicious, the facts alleged do not state a claim. When an inmate is attacked by another inmate, the Constitution is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Felder alleges that he was outside of his cell in his assigned cellhouse when he was attacked. He alleges that his attacker "was not in an AUTHORIZED area and/or AUTHORIZED to be released from his cell . . .." (DE # 16 at 4.) He alleges that Officers M. Razo and A. Steward violated prison policies by allowing that inmate to be out of his cell when he attacked plaintiff. He alleges that they "knew or should have known their conduct would have led to impending harm to the Plaintiff or others." *Id.* However, this does not state a claim.

> Some level of brutality . . . is inevitable no matter what the guards do.
> Worse: because violence is inevitable unless all prisoners are locked in
> their cells 24 hours a day and sedated (a "solution" posing constitutional
> problems of its own) it will always be possible to say that the guards

---

[1] The state case was filed on August 22, 2014. *See* Odyssey Case Management System, (Feb. 9, 2016) http://mycase.in.gov/default.aspx. This case was filed a month later on September 25, 2014.

2

> "should have known" of the risk. Indeed they should, and do. Applied to a prison, the objective "should have known" formula of tort law approaches absolute liability, rather a long distance from the Supreme Court's standards in *Estelle* and its offspring.

*McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991), *abrogated on other grounds by Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996).

Here, Felder acknowledges that he "was the victim of an unprovoked attack . . . ." (DE # 16 at 3.) There are no facts in this complaint from which it could be inferred that either he or the defendant guards had any reason to believe that this attack was going to happen. Nevertheless, "[p]risons are dangerous places. Housing the most aggressive among us, they place violent people in close quarters." *McGill*, 944 F.2d at 345. This is why even general requests for help and expressions of fear are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008).

> Klebanowski testified during his deposition that he told officers twice on September 8 that he was afraid for his life and he wanted to be transferred off the tier. Those statements, and the officers' knowledge of the first beating, are the only pieces of evidence in the record that can assist Klebanowski in his attempt to show that the officers were aware of any risk to him. We have previously held that statements like those made by Klebanowski are insufficient to alert officers to a specific threat. *Butera*, 285 F.3d at 606 (deeming insufficient to establish deliberate indifference statements by a prisoner that he was "having problems in the block" and "needed to be removed"). In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the identities of those who threatened the inmate, nor state what the threats were.

*Id.*

> The facts of this case make clear our reason for requiring more than
> general allegations of fear or the need to be removed. By Klebanowski's
> own testimony, the officers knew only that he had been involved in an
> altercation with three other inmates, and that he wanted a transfer
> because he feared for his life. He did not tell them that he had actually
> been threatened with future violence, nor that the attack on September 8
> was inflicted by gang members because of his non-gang status. Without
> these additional facts to rely on, there was nothing leading the officers to
> believe that Klebanowski himself was not speculating regarding the threat
> he faced out of fear based on the first attack he suffered. This lack of
> specificity falls below the required notice an officer must have for liability
> to attach for deliberate indifference.

*Id.* at 639–40 (footnote omitted).

Unlike *Klebanowski*, Felder does not even allege that he expressed any concerns prior to the attack. Neither does he allege – nor provide a factual basis indicating – that either of the defendant officers had any idea that there was a specific risk that he might be attacked. As such, the defendant guards are not alleged to have had actual knowledge that a substantial risk of serious harm existed nor that they were deliberately indifferent to it. Therefore this count does not state a claim.

**B.    Count Two**

Felder alleges that Indiana State Prison Superintendent William Wilson "negligently trained and supervised Defendants Razo and Steward . . .." (DE # 16 at 5.) Superintendent Wilson was also a defendant in the prior State court case. In that case, Felder alleged that it was his duty to "ensure each staff member employed has completed the mandatory training . . .." (DE # 1-1 at 45.) Though worded differently, this is the same claim he is asserting in this case. Suing Wilson twice based on the same

events is malicious. Nevertheless, even if this count were not malicious, it does not state a claim.

Though "[a]n allegation of a 'failure to train' is available . . . in limited circumstances" *Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993),

> [i]t is undisputed that, absent a constitutional violation by [the officers], the other Defendants – municipal bodies and supervisors – are not subject to § 1983 liability. *See Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir.2003) (individual officers must be liable on underlying substantive claim for municipal liability to attach under either failure to train or failure to implement theory); *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 779 n. 14 (7th Cir.2014) (no respondeat superior liability under § 1983).

*Flint v. City of Belvidere*, 791 F.3d 764, 766 (7th Cir. 2015). Because Felder does not have a viable underlying claim against the two guards, count two does not state a claim.

### C. Count Three

Lastly, Felder alleges that he was denied due process when he was placed in segregation which ultimately lasted for nearly ten months. The Constitution does not create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, an inmate will be entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. After *Sandin*, inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes,

5

even when they are subjected to harsher conditions as a result. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005). However, placement in long-term segregation approaching a year or more can implicate a liberty interest, requiring further inquiry into whether the conditions of confinement impose an atypical, significant hardship. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009) (determination of whether 240 days in segregation imposed an atypical, significant hardship could not be made at the pleading stage).

Here, Felder was placed in disciplinary segregation on March 19, 2014, after fighting[2] with another inmate. (DE # 16 at 3.) He was notified that the reason he was being placed in segregation was "for the safety & security of the facility. Fighting/Assault/ Battery B-212." (DE # 1-1 at 1.) On April 24, 2014, Felder was moved to administrative segregation. DE 16 at 5. He was notified that the reason he was being retained in segregation was "waiting for DHB charges - still under investigation." (DE # 1-1 at 3.) On April 29, 2014, he filed a classification appeal which was denied because "you are under investigation . . .." (DE # 1-1 at 11.) On May 15, 2014, he was found guilty of assault/battery and deprived of earned credit time. (DE # 16 at 6.) *See also Felder v. Superintendent*, 2:14-CV-283, 2015 WL 4490735 (N.D. Ind. July 23, 2015) (order denying habeas corpus petition challenging this prison disciplinary proceeding).[3] The

---

[2] Felder argues that he was acting in self-defense. However, fighting in prison is a violation of the rules and "inmates do not have a constitutional right to raise self-defense as a defense in the context of prison disciplinary proceedings." *Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011).

[3] Because Felder lost earned credit time which has not been restored, *Edwards v. Balisok*, 520 U.S. 641, 643 (1997), prohibits a finding in this case which would undermine that determination of guilt.

conduct report in that disciplinary proceeding explained that video of the incident showed "Daniels broke loose and ran toward the front of the range, with Felder in pursuit, into a crowd of offenders. Felder can be seen striking Daniels in the areas where Daniels was injured. Daniels can be seen blocking Felder's blows." *Id.* at *1 and (DE # 1-1 at 53.)

On May 25, 2014, Felder filed a second classification appeal complaining that he had not received a response to his first appeal. (DE # 1-1 at 12-14.) In response he was sent another copy of the prior response. *Id.* On June 3, 2014, he filed a third classification appeal which was denied because "you will receive a review when you have been on the unit for 90 days." (DE # 1-1 at 15.) Nevertheless, Felder filed a fourth classification appeal on June 11, 2014, and a fifth one on June 17, 2014. (DE # 1-1 at 17 and 19.) On June 23, 2014, a classification hearing was held and he was notified that he would remain in segregation because he had "a history of destructive behavior and conduct that disrupts the safety and security of the facility." (DE # 1-1 at 22.) On June 25, 2014, Felder filed a sixth classification appeal which was denied "due to your conduct and for the safety and security of the facility." (DE # 1-1 at 24.) On July 15, 2014, Felder filed a seventh classification appeal complaining that he had not received copies of various documents in response to letters he had sent to prison staff. (DE # 1-1 at 34.) It was denied because it was not really a classification appeal, but rather a request for copies. On July 30, 2014, Felder was present for his 90 day review. (DE # 16 at 8.) On August 18, 2014, Felder filed his eighth classification appeal which was denied because the

classification committee recommended that he be retained in segregation because of his conduct history. (DE # 1-1 at 56.) On January 12, 2015, Defendant Roberts conducted a classification hearing and recommended that Felder be released from segregation. (DE # 16 at 9.) On January 14, 2015, he was released back in to general population. *Id.*

If Felder's ten months in segregation at the Indiana State Prison were not an atypical and significant hardship, then he was not entitled to any due process rights and this count would not state a claim. Nevertheless, even if his time in segregation was an atypical and significant hardship, his due process rights were very limited. Where such a liberty interest is at stake, an inmate is only entitled to "some informal, nonadverserial" procedures. *Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012.) Informal due process requires "some notice" of the reason for the inmate's placement and an opportunity to present his views. *Id.* The initial placement review need only take place "within a reasonable time" and the inmate is not entitled to a hearing, to call witnesses, or to require prison officials to interview witnesses. *Id.* He is also not entitled to a written decision describing the reasons for his placement or to a formal appeal procedure. *Id.* at 686. He is entitled to periodic review of his placement, but this process may also be informal and non-adversarial. *Id.* The frequency of such review is "committed to the administrative discretion of prison officials." *Id.* at 685. Review "need only be sufficiently frequent that administrative segregation does not become a pretext for indefinite confinement." *Id.* at 686. In short, "the requirements of informal due

process leave substantial discretion and flexibility in the hands of the prison administrators." *Id.* at 685.

Here, Felder's due process rights were not violated. When he was initially placed in segregation on March 19, 2014, he was told why. Even while the disciplinary investigation was still ongoing, his classification status was reviewed on April 24, 2014. Though he was not entitled to a written explanation or a formal appeal procedure, he was given both. Felder used the classification appeal process eight times and in so doing was able to present his reasons for why he should not remain in segregation. His placement in segregation was reviewed every 90 days and though his attendance was not required by the constitution, he attended at least one of those hearings. Ultimately, as a result of such a review, he was released back to general population. Thus, Felder received more due process than the constitution required and this count does not state a claim.

## III. CONCLUSION

For these reasons, this case is **DISMISSED** pursuant to 28 U.S.C. § 1915A.

                                   **SO ORDERED**.

DATE: February 12, 2016

                            s/ James T. Moody
                            JUDGE JAMES T. MOODY
                            UNITED STATES DISTRICT COURT